## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ALMA DELIA IBARRA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No.15-1158-KHV** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Alma Delia Ibarra appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* For reasons set forth below, the Court finds that the judgment of the Commissioner should be reversed.

**I.      Procedural Background**

Plaintiff was born in 1979.  On February 7, 2012, she filed disability and supplemental security applications with the Social Security Administration.  Plaintiff initially alleged a disability onset date of June 1, 2011, but later amended the onset date to January 26, 2012.  She alleged disability due to "simple partial seizures" and anxiety.

The agency denied plaintiff's application initially and on reconsideration.  On October 31, 2013, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the Social Security Act and that she was not entitled to benefits.  See Tr. 44-55. The Appeals Council denied plaintiff's request for review.  The ALJ decision thus stands as the final decision of the Commissioner.  See 42 U.S.C. § 405(g).  Plaintiff appealed to this Court the final decision of the Commissioner.

## II.    Standard Of Review

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084.  Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).  Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will meticulously examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings.  Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## III.   Frame Work For Analyzing Claim Of Disability

Plaintiff bears the burden of proving disability under the Social Security Act. Wall, 561 F.3d at 1062.  Plaintiff is under a disability if she can establish that she has a severe physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844

F.2d 748, 750 (10th Cir. 1988)).   In the first three steps, the Commissioner determines whether (1) claimant has engaged in substantial gainful activity since the alleged onset, (2) she has a severe impairment or combination of impairments and (3) the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity.   20 C.F.R. § 404.1520(c), (d); see Williams, 844 F.2d at 750-51.   If claimant satisfies steps one, two and three, she will automatically be found disabled.   If claimant satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ makes specific findings of fact at three phases: (1) the individual's residual functioning capacity ("RFC"), (2) the physical and mental demands of prior jobs or occupations and (3) given her RFC, the individual's ability to return to the past occupation.   Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996).   If claimant satisfies step four, the burden shifts to the Commissioner at step five to establish that she is capable of performing work in the national economy.   Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005); see 20 C.F.R. § 404.1520(a)(5).

## IV.    Facts

The following is a very brief summary of the evidence presented to the ALJ.

A.    Medical Evidence

Plaintiff has a history of complex partial seizures.   In May of 2011, plaintiff experienced psychotic and manic symptoms after a seizure.   A psychiatrist, Dr. Paul Murphy, M.D. diagnosed delirium due to posticital phase, and noted that plaintiff had a history of major depressive disorder and anxiety.   Tr. 450.

Dr. Jodi Metzger, M.D. has served as plaintiff's primary care physician since at least 2009.

As a treating physician, Dr. Metzger opined that plaintiff was unable to work after she had a seizure. Tr. 432-33. Dr. Metzger also noted that plaintiff suffered from underlying depression. The ALJ gave this opinion "only some weight," stating that the evidence does not suggest seizures of sufficient frequency or duration to preclude all work.

After plaintiff's seizure and psychotic episode in May of 2011, Dr. Metzger referred plaintiff to a neurologist, Dr. Bart A. Grelinger, M.D. Dr. Grelinger saw plaintiff several times over the next year. In June of 2011, Dr. Grelinger ordered a digital EEG which showed no abnormal neurological activity. Tr. 436. In November of 2011, Dr. Grelinger noted that plaintiff had a "20 year history of recurrent episodes of altered consciousness best described as a form of complex partial seizures." Tr. 459. He indicated that no physician had ever diagnosed pseudo seizures, but that plaintiff is sometimes able to prevent a seizure, which "further raises the question of nonepileptic events." Tr. 459, 463. Dr. Grelinger also noted that plaintiff's neurological exam and an EEG were unremarkable, and that she had two other normal EEGs in the past. On November 29, 2011, however, an EEG revealed partial complex seizures. Tr. 443, 487-88. Based on that EEG, Dr. Dilawer Abbas, M.D. recommended that plaintiff take buclosamide. Tr. 489.

On May 3, 2012, plaintiff saw Dr. Grelinger due to increased seizure activity which mostly occurred around her menses. She reported worsening headaches after seizures. Plaintiff reported that she had recently fallen and hit her head a few times during a seizure. A CT scan in May of 2012 was normal.

In December of 2012, Carol Eades, M.D. reviewed plaintiff's medical records and opined that plaintiff was capable of work at all exertional levels, but with additional restrictions on climbing and exposure to hazards based on her seizures. Tr. 133-36. ALJ gave this opinion significant

weight.

      B.     Plaintiff's Testimony

Plaintiff testified as follows:

She has a high school diploma and a two-year college degree.  She currently lives with her parents.  Plaintiff began to have seizures in grade school.  Over the years she had more frequent seizures.  In 2011, she had a seizure while driving and the State of Kansas revoked her driver's license.  Tr. 73.

From 2005 until January of 2012, plaintiff worked for Child Start, a program for children of low-income families.  Tr. 74.  Her supervisor fired her after she had health issues and started to miss work.  Tr. 75.  She missed work for medical appointments and when she did not feel well after a seizure; she missed one or two days a month.  Tr. 75.  The last month that she worked, she had four seizures.  In May through August of 2012, plaintiff had between two and nine seizures per month.  Tr. 78-79.  The seizures usually occur during or just before her menstrual period.

Depending on how strong a seizure is, plaintiff may fall, drool, bite her tongue or twitch, and is sometimes incontinent.  Tr. 80.  A seizure may last from five to 20 minutes.  Afterwards, she feels very sore and tired and has trouble understanding questions.  She needs to rest after a seizure, and sometimes could work after a seizure because she did not want to do something that was inappropriate.  Tr. 94-96.  Plaintiff also has difficulty concentrating.  She suffers from headaches and anxiety. Tr. 81-82.

      C.    Vocational Expert Testimony

As set forth below, the ALJ found that plaintiff has an RFC to perform a full range of work at all exertional levels except that she (1) must avoid climbing ladders, ropes and scaffolds (2) must

avoid exposure to dangerous machinery and unprotected heights and (3) can perform simple and intermediate tasks, i.e. unskilled and semiskilled level tasks. The vocational expert testified that an individual of plaintiff's age, education, training and work history with this RFC could perform her past work of data entry specialist and massage therapist. She could also perform other work in the national economy including information clerk, appointment clerk and telemarketer. If an employee had to take unscheduled breaks to deal with the feeling that a seizure is coming on or to deal with mental health symptoms, that would be frowned on. Further, if claimant had to miss over two days a month it would likely preclude employment, although there is variation among employers. Tr. 87-97.

## V.     ALJ Findings

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2. The claimant has not engaged in substantial gainful activity since January 26, 2012, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: complex partial seizures of unknown etiology, adjustment disorder with depressed mood, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid climbing ladders, ropes, and scaffolds; must avoid exposure to dangerous machinery and unprotected heights; and can perform simple and intermediate tasks.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). The vocational expert testified that claimant could perform prior work;

however, these jobs do not meet the requirements of past relevant work.

&ast; &ast; &ast;

7. The claimant was born on November 10, 1979 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Pa11404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

&ast; &ast; &ast;

11. The claimant has not been under a disability, as defined in the Social Security Act, from June, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 46-54.

**VI.    Analysis**

Plaintiff asserts that the ALJ failed to properly evaluate her credibility with respect to her seizure disorder and thus did not properly evaluate the impact of her seizure disorder on her residual functional capacity ("RFC").

Plaintiff challenges the ALJ determination that her testimony about the frequency and impact of her seizures was only partially credible.  In reviewing ALJ credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."  Casias v. Sec'y of HHS, 933 F.2d 799, 801 (10th Cir. 1991).  Credibility is the province of the ALJ.  Hamilton v. Sec'y of HHS, 961 F.2d 1495, 1499 (10th Cir. 1992).  At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that

a claimant's subjective complaints are not credible.  See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Id. (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)).  So long as he sets forth the specific evidence on which he relies in evaluating claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001); see Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  In making a finding about credibility, the ALJ need not totally accept or totally reject the individual's statements.  See Social Security Ruling ("SSR") 96-7p, 61 Fed. Reg. 34483, 34486 (July 2, 1996).  Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible."  See id.

The Tenth Circuit has set forth the proper framework for analyzing evidence of subjective symptoms.  See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).  The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based upon all objective and subjective evidence.  See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987).  In the final step, the ALJ should consider the following factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because plaintiff satisfied the first two factors, the ALJ had to consider plaintiff's assertions regarding subjective conditions and decide whether he believed them. See Luna, 834 F.2d at 163. The ALJ rejected plaintiff's testimony that the frequency and effects of her seizures caused her to miss two or more days per month of work. Plaintiff asserts that the ALJ found her not fully credible based on erroneous findings that (1) the Child Start program fired her for reasons unrelated to her impairments; (2) she provided inconsistent information about her living arrangements; (3) her report of the number of seizures was inconsistent with medical records and with her sister's report and (4) physicians have not determined the etiology of her seizures.

First, relying on a form which plaintiff completed in late January of 2012, the ALJ concluded that the Child Start program fired her for reasons unrelated to her impairments, The form asked whether plaintiff quit working because of her impairments. Plaintiff checked the boxes for "no," and "[b]ecause of other reasons," but in the space for explanation she wrote, "I am currently suspended from work due to inabilities to complete my job tasks." She later testified that she lost her job at Child Start at the end of January of 2012 because she missed a lot of shifts for medical appointments. The record thus does not support the ALJ's conclusion that Child Start fired plaintiff for reasons *unrelated* to her impairment.

Second, the ALJ questioned plaintiff's credibility because he found that she provided inconsistent information about her living arrangements. Tr. 50 (inconsistencies suggest that information plaintiff provided "generally may not be entirely reliable"). The ALJ cited a report by Molly Allen, Psy.D. who noted that although plaintiff first said that she was living with an aunt in Wichita, toward the end of the interview plaintiff "admitted" that she was staying with her parents in Pratt. Tr. 589. The record thus arguably supports this reason for questioning plaintiff's

reliability.

Third, the ALJ found that plaintiff's report of the frequency of her seizures was inconsistent with medical records and with her sister's report.  Plaintiff reported to the Social Security Administration that she had three to five or four to six seizures per month.  Various medical records indicate that plaintiff generally reported seizure frequency of between three and five seizures a month; sometimes, however, she  reported as many as eight or nine seizures.  Tr. 411, 525, 577, 772, Tr. 660.  Thus plaintiff's reports to the agency and the medical records are not inconsistent.  Her sister's report that plaintiff had five to ten seizures a month does not appear to be a reason to discount plaintiff's credibility or reliability; the record does not reflect whether her sister lived with plaintiff or how the sister arrived at the figure of five to ten seizures a month.

Fourth, the ALJ concluded that the uncertain etiology of plaintiff's seizures casts doubt on her credibility.  Tr. 51.  Specifically, the ALJ noted that although doctors had speculated that a bout of meningitis may have caused plaintiff's seizures, some EEGs, a CT scan and an MRI were normal. The ALJ acknowledged that a video EEG recorded two episodes of seizure activity, but stated that subsequent records "suggest that her provider was not persuaded these episodes were genuine seizures."  Tr. 50, citing Ex. 27F at 26; see Tr. 526.  The ALJ then stated that because plaintiff can sometimes "fight away" a seizure, there is likely not a physical or epileptic cause.  Tr. 51, citing Ex. 15F at 6.  The ALJ pointed to Dr. Grelinger's clinical report in July of 2012, in which Dr. Grelinger set forth his impressions as follows:

> Roughly a 20 year history of recurrent episodes of altered consciousness that have been felt to represent complex partial seizures in the past.  Recent multiple trials of anticonvulsants have offered no improvement. [T]apering off these medications is not associated with worsening.   Both patient's description and her response to anticonvulsants make me suspicious these were not epileptiform in origin.  Work[-]up at University Kansas school of medicine in Kansas City is underway.

Tr. 572.  Ultimately, KU did not complete a work-up.  In January of 2013, Dr. Grelinger conducted an EEG which did not reveal abnormal neurological activity.  Tr. 681.  In March of 2013, however, Dr. Grelinger prescribed Dilantin, which is an anticonvulsant used to treat epilepsy.  In any event, the ALJ does not explain how etiology of the seizures impacts plaintiff's credibility.

This Court ordinarily defers to the ALJ as trier of fact on credibility and will not upset such determinations if supported by substantial evidence.  See Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010).  Here, however, the record does not support many of the reasons which the ALJ gave for discounting plaintiff's credibility.  See Thompson, 987 F.2d at 1490.

Because the ALJ based his RFC findings in part on his determination that plaintiff was not credible, the Court must remand for further proceedings.  On remand, the Secretary shall analyze plaintiff's subjective testimony and claims regarding the frequency and effect of her seizures using the proper legal standards consistent with this decision.[1]

---

[1]      Plaintiff also asserts that the ALJ determined that she had severe impairments of adjustment disorder with depressed mood and generalized anxiety disorder but did not explain how the RFC accommodated these impairments.  Because the Court remands for the ALJ to reassess plaintiff's credibility and to explain how the RFC accounts for the frequency of her seizures, the Court does not reach this issue.  On remand, the ALJ shall specifically address how the RFC accommodates plaintiff's severe impairments of adjustment disorder with depressed mood and generalized anxiety disorder.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** for further proceedings in accordance with this memorandum and order.

Dated this 21st day of September, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge